TITAN INSURANCE COMPANY v AMERICAN COUNTRY
INSURANCE COMPANY

BRONSON METHODIST HOSPITAL v TITAN INSURANCE
COMPANY

Docket Nos. 319342 and 321598. Submitted August 5, 2015, at Lansing.
Decided September 15, 2015, at 9:05 a.m. Leave to appeal denied
499 Mich 944.

In Docket No. 319342, Titan Insurance Company brought an action
in the Wayne Circuit Court against American Country Insurance
Company following a motor vehicle accident involving an unin-
sured vehicle. Stanley Hughes was injured while operating an
uninsured van owned by Safe Arrival Transportation, which was
in the business of transporting passengers. Hughes did not have
a personal no-fault policy. Hughes's claim was assigned to Titan.
Titan filed suit asserting that American Country, which insured a
different vehicle owned by Safe Arrival, was a higher priority
insurer. The parties filed cross-motions for summary disposition.
The court, Lita M. Popke, J., granted summary disposition in
favor of American Country. Titan appealed.

In Docket No. 321598, Bronson Methodist Hospital brought an
action in the 8th District Court, Robert C. Kropf, J., against Titan
and American Country following a motor vehicle accident involv-
ing an uninsured vehicle. George Slack was injured while oper-
ating an uninsured van owned by Bronco Express Company, a
taxi service. Slack did not have a personal no-fault policy. Slack
was treated at Bronson, which sought reimbursement. The claim
was assigned to Titan, but Titan asserted that American Country
was responsible for the claim because American Country insured
other vehicles owned by Bronco Express. Titan filed a cross-claim
against American Country in Bronson's suit. American Country
moved for summary disposition. The court held that American
Country was responsible for the claim. American Country ap-
pealed in the Kalamazoo Circuit Court, Alexander C. Lipsey, J.,
which affirmed the district court's ruling. American Country
sought leave to appeal. The Court of Appeals granted leave in
Docket No. 321598 and consolidated the appeal in that case with
the appeal in Docket No. 319342.

The Court of Appeals held:

Under MCL 500.3114(1), a person must generally seek personal protection insurance (PIP) benefits from his or her own insurer, but the exceptions set forth in MCL 500.3114(2), (3), and (5) supersede the general rule. Under MCL 500.3172, if no insurance is available, a person may obtain benefits through the Assigned Claims Plan. MCL 500.3114(2) states that a person suffering accidental bodily injury while an operator or a passenger of a motor vehicle operated in the business of transporting passengers shall receive the personal protection insurance benefits to which the person is entitled from the insurer of the motor vehicle. In these cases, if the vehicles at issue had been properly insured, Subsection (2) would have applied. Caselaw indicates that in cases such as those at issue here, in which an exception to MCL 500.3114(1) should apply but insurance is not available, the general rule of Subsection (1) applies. Caselaw further demonstrates that in cases in which Subsection (1) applies, but a personal no-fault insurer is not available, as was the case here because neither Hughes nor Slack had no-fault insurance, Subsection (4) applies. Subsection (4) states that except as provided in Subsections (1) to (3), a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim PIP benefits from insurers in the following order of priority: (a) the insurer of the owner or registrant of the vehicle occupied, and then, (b) the insurer of the operator of the vehicle occupied. Taken together, Subsections (1) and (4) establish the general order of priority. That is, the language "[e]xcept as provided in subsections (1) to (3)" at the beginning of Subsection (4) means "if insurance is not available under Subsections (1) to (3)." In the cases on appeal, under Subsection (4)(a), because American Country insured other vehicles owned by Safe Arrival and Bronco Express, it was responsible for the claims at issue.

Circuit court judgment in Docket No. 319342 reversed, and circuit court judgment in Docket No. 321598 affirmed. Docket No. 319342 remanded for further proceedings.

GLEICHER, J., concurring, agreed with the majority that under controlling caselaw American Country stood in higher priority than Titan, but wrote separately to suggest that the text of MCL 500.3114 merited renewed consideration by the Supreme Court, and stated that if she were writing on a clean slate, she would hold the priority rules set forth in the statute ambiguous when applied to PIP claims arising from commercial vehicle accidents. MCL 500.3114(2) plainly provides, with carefully delineated exceptions, that when a vehicle used in the commercial transpor-

tation of customers is involved in an injury-producing accident, the insurer of the commercial vehicle provides PIP coverage. The Legislature omitted from this subsection any priority fall-back rules. The Legislature's omission of an alternative priority scheme in the subsection specifically addressing vehicles operated in the business of transporting passengers could mean that the Legislature did not intend to place responsibility on a specific insurer that had not undertaken the risk of insuring the commercial vehicle, but rather that when there was no coverage for the vehicle that coverage would automatically default to the Assigned Claims Plan. Alternatively, and as the lead opinion held, Subsection (4) serves as the priority road-map for vehicles operated in the business of transporting passengers, even though such vehicles are not mentioned in that subsection. A footnote in *Parks v Detroit Auto Inter-Ins Exch*, 426 Mich 191 (1986), supports the conclusion reached in the lead opinion. Application of that rule in these cases means that American Country is responsible for the PIP claims at issue, despite the fact that American Country never agreed to insure the commercial vehicles involved in the accidents. Perhaps this is what the Legislature intended. But given the plain language of Subsections (2) and (4), it is plausible that the Legislature envisioned that if a commercial transportation service owner failed to obtain PIP coverage for some vehicles in his or her fleet, the risk would be spread to all insurers subject to assigned claims obligations through the Assigned Claims Plan. This ambiguity warrants further consideration by the Michigan Supreme Court.

INSURANCE — NO-FAULT — PRIORITY.

Under MCL 500.3114(1), a person must generally seek personal protection insurance (PIP) benefits from his or her own insurer, but the exceptions set forth in MCL 500.3114(2), (3), and (5) supersede the general rule; when an exception to MCL 500.3114(1) should apply but insurance is not available in accordance with that exception, the general rule of Subsection (1) applies; when Subsection (1) applies, but a personal no-fault insurer is not available, Subsection (4) applies; under Subsection (4), if insurance is not available under Subsections (1) to (3), a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim PIP benefits from insurers in the following order of priority: (a) the insurer of the owner or registrant of the vehicle occupied, and then, (b) the insurer of the operator of the vehicle occupied.

Docket No. 319342:

*Anselmi & Mierzejewski, PC* (by *Kevin P. Wirth*), for Titan Insurance Company.

*Liedel Law Group* (by *William J. Liedel*) for American Country Insurance.

Docket No. 321598:

*Law Offices of Ronald M. Sangster PLLC* (by *Ronald M. Sangster, Jr.,*) and *Harvey Kruse PC* (by *Lanae L. Monera*) for Titan Insurance Company.

*Liedel Law Group* (by *William J. Liedel*) for American Country Insurance.

Before: RONAYNE KRAUSE, P.J., and GLEICHER and STEPHENS, JJ.

RONAYNE KRAUSE, P.J. This consolidated appeal stems from motor vehicle accidents involving uninsured drivers. At issue is which insurance providers are responsible for the claims in issue. In Docket No. 319342, the Wayne Circuit Court granted defendant American Country Insurance Company's (American Country) motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). Plaintiff Titan Insurance Company (Titan) appeals as of right. In Docket No. 321598, the Kalamazoo Circuit Court affirmed the district court's decision granting judgment in favor of Titan against American Country.[1] American Country appeals by leave granted. *Bronson*

---

[1] Disputed claims involving Bronson Methodist Hospital are not at issue in this appeal, as this Court granted Bronson's motion to be dismissed as a party to the appeal. *Bronson Methodist Hosp v Titan Ins Co*, unpublished order of the Court of Appeals, entered June 12, 2015 (Docket No. 321598).

*Methodist Hosp v Titan Ins Co*, unpublished order of the Court of Appeals, entered September 29, 2014 (Docket No. 321598). We reverse in Docket No. 319342 and affirm in Docket No. 321598.

In Docket No. 319342, Stanley Hughes was injured in a motor vehicle accident while operating a van owned by and registered to Safe Arrival Transportation, which is in the business of transporting passengers. The van was uninsured. Hughes, an independent contractor for Safe Arrival, did not have a personal no-fault policy. Titan was assigned to handle Hughes's claim. Titan thereafter filed suit against American Country, which insured another vehicle owned by Safe Arrival, asserting that American Country is the higher priority insurer and that Titan was entitled to reimbursement from American Country. The parties filed cross-motions for summary disposition, each asserting that the other was the higher priority insurer. Following oral argument, the trial court granted American Country's motion and denied Titan's. Titan moved for reconsideration, which the trial court denied.

In Docket No. 321598, George Slack was injured in a motor vehicle accident while driving a van for Bronco Express Company, a taxi service company. Slack did not have a personal insurer. The van was uninsured, but American Country insured other vehicles owned by Bronco Express. Slack was treated at Bronson Methodist Hospital, which later sought reimbursement. The claim was assigned to Titan, but Titan denied it, asserting that American Country was responsible for the claim under the no-fault act, MCL 500.3101 *et seq.*, because it insured other vehicles owned by Bronco Express. However, American Country also denied the claim. Bronson thereafter filed suit in district court against Titan and American Country, and Titan cross-

claimed against American Country. American Country
then moved for summary disposition. The district court
held that American Country was responsible for the
claim. American Country then appealed in the circuit
court, which affirmed the district court's holding.
American Country moved for reconsideration, which
the court denied.

At issue in this case is the priority of insurers under
MCL 500.3114, a question of statutory interpretation,
which this Court reviews de novo. *Vitale v Auto Club
Ins Ass'n*, 233 Mich App 539, 542; 593 NW2d 187
(1999). MCL 500.3114 provides as follows:

(1) Except as provided in subsections (2), (3), and (5), a
personal protection insurance policy described in [MCL
500.3101(1)] applies to accidental bodily injury to the
person named in the policy, the person's spouse, and a
relative of either domiciled in the same household, if the
injury arises from a motor vehicle accident. A personal
injury insurance policy described in [MCL 500.3103(2)]
applies to accidental bodily injury to the person named in
the policy, the person's spouse, and a relative of either
domiciled in the same household, if the injury arises from
a motorcycle accident. When personal protection insur-
ance benefits or personal injury benefits described in
[MCL 500.3103(2)] are payable to or for the benefit of an
injured person under his or her own policy and would also
be payable under the policy of his or her spouse, relative,
or relative's spouse, the injured person's insurer shall pay
all of the benefits and is not entitled to recoupment from
the other insurer.

(2) A person suffering accidental bodily injury while an
operator or a passenger of a motor vehicle operated in the
business of transporting passengers shall receive the
personal protection insurance benefits to which the person
is entitled from the insurer of the motor vehicle. This
subsection does not apply to a passenger in the following,
unless that passenger is not entitled to personal protec-
tion insurance benefits under any other policy:

(a) A school bus, as defined by the department of education, providing transportation not prohibited by law.

(b) A bus operated by a common carrier of passengers certified by the department of transportation.

(c) A bus operating under a government sponsored transportation program.

(d) A bus operated by or providing service to a nonprofit organization.

(e) A taxicab insured as prescribed in [MCL 500.3101 or MCL 500.3102].

(f) A bus operated by a canoe or other watercraft, bicycle, or horse livery used only to transport passengers to or from a destination point.

(3) An employee, his or her spouse, or a relative of either domiciled in the same household, who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle.

(4) Except as provided in subsections (1) to (3), a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:

(a) The insurer of the owner or registrant of the vehicle occupied.

(b) The insurer of the operator of the vehicle occupied.

(5) A person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:

(a) The insurer of the owner or registrant of the motor vehicle involved in the accident.

(b) The insurer of the operator of the motor vehicle involved in the accident.

(c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.

(d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident.

(6) If 2 or more insurers are in the same order of priority to provide personal protection insurance benefits under subsection (5), an insurer paying benefits due is entitled to partial recoupment from the other insurers in the same order of priority, together with a reasonable amount of partial recoupment of the expense of processing the claim, in order to accomplish equitable distribution of the loss among all of the insurers.

Generally, pursuant to MCL 500.3114(1), a person must seek personal protection insurance (PIP) benefits from his or her own insurer. *Farmers Ins Exch v Farm Bureau Gen Ins Co*, 272 Mich App 106, 111; 724 NW2d 485 (2006). However, the exceptions in Subsections (2), (3), and (5) supersede this general rule. *Id.* If no insurance is available, a person may obtain benefits through the Assigned Claims Plan, which serves as the insurer of last priority. MCL 500.3172; *Cason v Auto Owners Ins Co*, 181 Mich App 600, 610; 450 NW2d 6 (1989).

All parties agree that because Hughes and Slack were operators of motor vehicles in the business of transporting passengers, we must first examine Subsection (2). Subsection (2) states that the injured person is entitled to PIP benefits from the insurer of the motor vehicle. However, because the vehicles in both cases were uninsured, Subsection (2) does not apply. At issue, then, is whether the other subsections of MCL 500.3114 can still be applied. Titan argues that other subsections of the statute indeed apply and because insurance is not available under Subsection

(1), Subsection (4) should apply. Under this reading of the statute, American Country would be liable under MCL 500.3114(4)(a), because it insured other vehicles owned by Safe Arrival and Bronco Express. See *Farmers Ins Exch*, 272 Mich App at 113-114; *Pioneer State Mut Ins Co v Titan Ins Co*, 252 Mich App 330, 335-337; 652 NW2d 469 (2002). American Country counters that there is no indication in the statute that once it is determined that insurance is unavailable under Subsection (2), Subsection (4) applies. It argues that because there is no insurance available under Subsection (2), Titan, as the assigned insurer, is responsible.

In Docket No. 319342, the circuit court held that because Subsection (2) was the most relevant subsection given the circumstances of this case, it was "the only provision that applies to [Hughes's] injuries . . . ." The court concluded that because there was no insurance available under Subsection (2), the Assigned Claims Plan was responsible for Hughes's claim. The court also reasoned that there was nothing in MCL 500.3114 indicating that if insurance is not available under Subsection (2) that Subsection (4) would then apply.

In Docket No. 321598, the circuit court reached the opposite conclusion. American Country had relied on the language "[e]xcept as provided in subsections (1) to (3)," found at the beginning of Subsection (4), to argue that if Subsections (1) through (3) could apply but insurance was not available, Subsection (4) would not apply. The circuit court rejected that argument, saying that it "would make that particular provision of four mean that if anyone, for whatever reason, could show that for subparagraph 1 or subparagraph 3 that there was not an insurer available that somehow that would

accept [sic] that individual . . . from resorting to sub-
section (4)." The court said that it did not "believe that
the language as relates to the quoted passage is saying
that an individual is precluded from using four if it
could theoretically fall within the purview of one, two,
or three." The court accordingly held that because
insurance was not available under Subsections (1)
through (3), Subsection (4) applied, and American
Country was responsible for the claim.

Turning for guidance to cases examining the inter-
action of other subsections of the statute, we discern a
general rule that when an exception to Subsection (1)
should apply but insurance is not available, the gen-
eral rule of Subsection (1) applies. In *Auto-Owners Ins
Co v Lombardi Food Serv, Inc*, 137 Mich App 695,
696-697; 358 NW2d 923 (1984), an employee was
injured while riding in a truck that was owned or
leased by his employer, and thus Subsection (3) would
have been applicable. However, the employer had
failed to insure the truck. *Id.* at 696. The Court held
that the employee's personal insurer was liable under
Subsection (1). *Id.* at 697. See also *Parks v Detroit Auto
Inter-Ins Exch*, 426 Mich 191, 206; 393 NW2d 833
(1986) (stating that when no insurance is available
under Subsection (3), the employee is entitled to ben-
efits from his or her personal insurer under Subsection
(1)). In *Frierson v West American Ins Co*, 261 Mich App
732, 733-737; 683 NW2d 695 (2004), the plaintiff was
injured while a passenger on a motorcycle in an acci-
dent involving a motor vehicle, and therefore Subsec-
tion (5) would have been applicable. However, the
insurers who would have been liable under that sub-
section were unidentifiable. *Id.* at 737. The Court held
that under *Parks*, the plaintiff's personal insurer was
liable under Subsection (1). *Id.* at 737-738. In addition,
the Court broadly stated, "[W]hen an insurer that

would be liable under one of the exceptions in MCL 500.3114(1) cannot be identified, the general rule applies and the injured party must look to her own insurer for personal protection insurance benefits." *Id.* at 738. As applied in the present case, because there is no identifiable insurance under Subsection (2), if Hughes and Slack had personal insurers, those personal insurers would be responsible for their benefits under Subsection (1).

Caselaw demonstrates that when Subsection (1) applies but an insurer is not available, as is the case here, Subsection (4) applies next. See *Mich Mut Ins Co v Farm Bureau Ins Group*, 183 Mich App 626, 630; 455 NW2d 352 (1990) (stating that when insurance is not available under Subsection (1), Subsection (4) applies). In *Parks*, 426 Mich at 203 n 3, our Supreme Court stated, "Those injured while occupants of motor vehicles must look to the rules provided in subsections 1, 2, and 3 before applying the priorities listed in subsection 4." (Emphasis omitted.) Indeed, this Court has stated that Subsections (1) and (4) together establish "the general order of priority . . . ." *Mich Mut Ins Co*, 183 Mich App at 631. Accordingly, if an exception provided in Subsections (2), (3), or (5) would apply but insurance is not available, Subsections (1) and (4) apply in tandem.

It is always possible that a person injured in a motor vehicle accident will have a personal policy and insurance will thus be available under Subsection (1). Under American Country's argument, because Subsection (1) could theoretically apply, Subsection (4) could never apply. This Court must avoid an interpretation that would render statutory language surplusage. *Robinson v Lansing*, 486 Mich 1, 21; 782 NW2d 171 (2010). Instead, Subsection (4) plainly governs which insur-

ance applies when insurance is unavailable under Subsection (1). That is, the language "[e]xcept as provided in subsections (1) to (3)" at the beginning of Subsection (4) means "if insurance is not available under Subsections (1) to (3)." As applied in the present cases on appeal, under Subsection (4), because American Country insured other vehicles owned by Safe Arrival and Bronco Express, it is responsible for the claims in these cases.

We reverse in Docket No. 319342 and affirm the lower court in Docket No. 321598. We remand Docket No. 319342 for further proceedings consistent with this opinion. We do not retain jurisdiction.

STEPHENS, J., concurred with RONAYNE KRAUSE, P.J.

GLEICHER, J. (*concurring*). These consolidated cases arise from two accidents involving two uninsured vans engaged in the business of transporting passengers. Defendant American Country Insurance Company insured other vehicles registered to the vans' owners. In both cases, plaintiff Titan Insurance Company was tapped by the assigned claims plan to handle the ensuing personal protection insurance (PIP) claims. The lead opinion holds that pursuant to a single sentence of obiter dictum contained in a 1986 footnote, American Country stands in higher priority than Titan and therefore must adjust the claims. I concur, but write separately to suggest that the text of the governing statute merits renewed consideration by the Supreme Court.

This case turns on the formula governing priority. MCL 500.3114 addresses "the order in which various potentially liable insurers will be required to cover a claim for benefits." *Parks v Detroit Auto Inter-Ins Exch*,

426 Mich 191, 201; 393 NW2d 833 (1986). The lead opinion holds that a subsection of the statute—MCL 500.3114(4)—controls the priority analysis in this case. According to Subsection (4), the lead opinion declares, American Country must manage the claims because it insured other vehicles owned by or registered to the two transportation businesses. I agree that a footnote in *Parks* compels this result. See *Parks*, 426 Mich at 203 n 3. Were we writing on a clean slate, I would hold the priority rules set forth in MCL 500.3114 ambiguous when applied to PIP claims arising from commercial vehicle accidents such as the two involved here.

A trio of foundational principles animates Michigan's no-fault act, MCL 500.3101 *et seq*. Losses occasioned by accidental bodily injury arising from the operation of a motor vehicle are compensated through a system of PIP benefits, payable without regard to fault. The owner or registrant of a vehicle must purchase PIP coverage, which usually covers any losses sustained by the individual. MCL 500.3105. "[I]n a majority of cases, specific recognized losses suffered as a result of motor vehicle accidents will be compensated for by a person's own insurer." *Belcher v Aetna Cas & Surety Co*, 409 Mich 231, 240; 293 NW2d 594 (1980).

The Legislature understood that despite the act's coverage imperative, the no-fault system would necessarily have to accommodate the PIP needs of uninsured occupants of uninsured vehicles. This recognition yielded the contemporaneous enactment of a back-up plan, a priority system specifying a method for payment of PIP benefits when an injured person lacked no-fault coverage. MCL 500.3114 maps the course of such priority determinations. At the end of the priority road stands the insurer of last priority: the Michigan Assigned Claims Plan (MACP) (successor to the Michi-

gan Assigned Claims Facility). MCL 500.3172(1). An
injured person looks to the MACP for PIP coverage

> if no [PIP] is applicable to the injury, no [PIP] applicable to
> the injury can be identified, the [PIP] applicable to the
> injury cannot be ascertained because of a dispute between
> 2 or more automobile insurers concerning their obligation
> to provide coverage or the equitable distribution of the
> loss, or the only identifiable [PIP] applicable to the injury
> is, because of financial inability of 1 or more insurers to
> fulfill their obligations, inadequate to provide benefits up
> to the maximum prescribed. [MCL 500.3172(1).]

Before they resort to the MACP, the no-fault act
contemplates that claimants will utilize MCL
500.3114's priority system to determine where to seek
coverage among no-fault insurers. MCL 500.3114(1)
states the general rule that a PIP policy applies to "the
person named in the policy, the person's spouse, and a
relative of either domiciled in the same household[.]"
Thus, an injured person usually turns to his or her own
policy first, even if the injury arises from the operation
of an uninsured vehicle.

Subsection (2) creates an exception to the rule set
forth in Subsection (1). An injured driver or occupant of
a motor vehicle "operated in the business of transport-
ing passengers" must look to "the insurer of the motor
vehicle" for PIP benefits, and not his or her own
insurer. This rule is subject to its own discrete excep-
tions, narrowing its reach. This subsection states in its
entirety:

> A person suffering accidental bodily injury while an
> operator or a passenger of a motor vehicle operated in the
> business of transporting passengers shall receive the
> [PIP] benefits to which the person is entitled *from the
> insurer of the motor vehicle*. This subsection does not apply
> to a passenger in the following, unless that passenger is
> not entitled to [PIP] benefits under any other policy:

(a) A school bus, as defined by the department of education, providing transportation not prohibited by law.

(b) A bus operated by a common carrier of passengers certified by the department of transportation.

(c) A bus operating under a government sponsored transportation program.

(d) A bus operated by or providing service to a nonprofit organization.

(e) A taxicab insured as prescribed in [MCL 500.3101 or MCL 500.3102].

(f) A bus operated by a canoe or other watercraft, bicycle, or horse livery used only to transport passengers to or from a destination point. [MCL 500.3114(2) (emphasis added).]

This Court has thoughtfully summarized that MCL 500.3114(2) and its exceptions

> relate to "commercial" situations. It was apparently the intent of the Legislature to place the burden of providing no-fault benefits on the insurers of these motor vehicles, rather than on the insurers of the injured individual. This scheme allows for predictability; coverage in the "commercial" setting will not depend on whether the injured individual is covered under another policy. A company issuing insurance covering a motor vehicle to be used in a [Subsection (2)] . . . situation will know in advance the scope of the risk it is insuring. The benefits will be speedily paid without requiring a suit to determine which of the two companies will pay what is admittedly due by one of them. [*State Farm Mut Auto Ins Co v Sentry Ins*, 91 Mich App 109, 114-115; 283 NW2d 661 (1979).]

MCL 500.3114(2) plainly provides that (with carefully delineated exceptions) when a vehicle used in the commercial transportation of customers is involved in an injury-producing accident, the insurer of the commercial vehicle provides PIP coverage. The Legislature omitted from this subsection any priority fall-back

rules, despite that the Legislature undoubtedly foresaw that injuries would arise from accidents involving *uninsured* commercial vehicles. Although the Legislature took pains to carve out discrete exceptions to Subsection (2), it notably omitted mention of or reference to a back-up plan governing the foreseeable risk that an owner of a commercial vehicle in the business of transporting passengers would fail to insure it.[1]

In this sense, Subsection (2) could logically be interpreted to function in a manner akin to a light switch. When turned on, coverage responsibility falls to the vehicle's insurer. When turned off, there is no coverage, which means that coverage automatically defaults to the insurer of last resort—the MACP. The Legislature's omission of an alternative priority scheme in the subsection specifically addressing vehicles operated in the business of transporting passengers could mean that the Legislature did not intend to place responsibility on a specific insurer that had not undertaken the risk of insuring the commercial vehicle. After all, "[i]t is impossible to hold an insurance company liable for a risk it did not assume." *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992).[2]

---

[1] The exceptions for school buses, taxicabs, and other specifically identified commercial vehicles place the responsibility for PIP coverage on the passenger's no-fault carrier, "unless that passenger is not entitled to [PIP] benefits under any other policy[.]" MCL 500.3114(2). Thus, the exceptions reinstate the general rule that one looks to one's own insurer for PIP coverage. The Legislature decreed that the insurers of a relatively small subset of commercial vehicles, such as the two vans involved in this case, would be liable for PIP benefits regardless of whether the injured person had his or her own no-fault policy.

[2] The MACP serves as an exception to this rule. The plan is a safety net, of sorts, designed to supply coverage for injured and uninsured automobile accident victims. The plan shifts the costs of care from the taxpayers or medical-care providers, placing it on the insurers who write most of the no-fault coverage policies in this state.

Alternatively, and as the lead opinion holds, Subsection (4) serves as the priority road map for vehicles operated in the business of transporting passengers, even though such vehicles are not mentioned in that subsection and appear to be specifically *exempted* from its reach:

> *Except as provided in subsections (1) to (3),* a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the vehicle occupied.
>
> (b) The insurer of the operator of the vehicle occupied. [MCL 500.3114(4) (emphasis added).]

What does the phrase "[e]xcept as provided in subsections (1) to (3)" mean in the context of Subsection (4)? It could mean that except when there is coverage, as set forth in Subsection (2), the rules of Subsection (4) apply. The lead opinion affords this meaning to the "except" clause, and I concur that this is a rational reading of MCL 500.3114(4). Moreover, the Supreme Court's footnote in *Parks* seems to dictate this result, as it states: "Those injured while *occupants* of motor vehicles must look to the rules provided in subsections 1, 2, and 3 before applying the priorities listed in subsection 4." *Parks*, 426 Mich at 203 n 3.[3]

Application of that rule in this case means that American Country is responsible for the PIP claims at issue, despite that American Country never agreed to insure the commercial vehicles involved in the accidents and never received a single dollar in premium

---

[3] *Parks* involved a claim governed by MCL 500.3114(3), and not Subsection (2).

payments for coverage of those vehicles. If MCL 500.3114(4) governs this priority dispute, the law has created a contract that did not exist, and holds American Country liable for risks it never assumed.

I submit that an alternate interpretation is equally valid: Subsection (2) operates as a stand-alone provision because it deals with a subset of vehicles presenting unique considerations. Owners of vehicles used to transport passengers are required to purchase PIP policies from no-fault insurers. Those no-fault insurers are required to pay PIP benefits to drivers and passengers of such insured commercial vehicles. Here, the vehicles were uninsured. *Parks* dictates that we burden American Country with coverage responsibility because American Country insured *other* vehicles owned or registered by the same (lawbreaking) businesses, rather than spreading the risk to all insurers writing no-fault policies in Michigan (as ordinarily occurs when the MACP serves as the default). American Country bears responsibility despite that it had no opportunity to underwrite the risks it undertook by insuring some (or perhaps even one) vehicle in a larger fleet.

Perhaps this is what the Legislature intended. But given the plain language of Subsections (2) and (4), I find it equally plausible that the Legislature envisioned that if a commercial transportation service owner failed to obtain PIP coverage for some vehicles in his or her fleet, the risk would be spread to all insurers subject to assigned claims obligations, rather than being borne solely by the innocent insurer for the remaining vehicles.